UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| CHARLES F. MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 09-50-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MICHAEL J. ASTURE, Commissioner of | ) | **AND ORDER** |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The plaintiff, Charles F. Miller, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the defendant, Commissioner of Social Security ("Commissioner"), which denied his August 30, 2006, applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Because the Commissioner's decision was supported by substantial evidence, the Court denies Miller's Motion for Summary Judgment, R. 12, and grants the defendant's, R. 13.

## FACTUAL BACKGROUND

Born in 1970, Charles Miller worked with Wells Group as a truck driver. Transcript ("Tr.") at 473. On or about July 17, 2006, Miller was involved in a trucking accident and injured his brain. *Id.* Thereafter, on August 21, 2006, he allegedly became disabled. *Id.* at 10.

In October 2006, Dr. Barry Burchett examined Miller. *Id.* at 14, 377-84. During that examination, Miller complained of daily headaches. *Id.* He was taking six extra-strength Tylenol per day to control the headaches. Miller also complained of discomfort in his knees.

*Id.* at 14-15.  He had never seen a doctor for the pain.  *Id.* at 15.  He stated that he also had back pain and mentioned that he had a history of scoliosis.  *Id.*  Dr. Burchett did not find any radiation of the pain to other parts of his body or numbness or tingling of the lower extremities.  *Id.* Moreover, he noted that Miller moved with a normal gait.  *Id.*  Dr. Burchett found Miller had no physical limitations.  *Id.* at 14-15.

In February 2007, Dr. Robert Granacher examined Miller.  *Id.* at 13, 430-59.  He found no evidence of brain injury due to Miller's July 2006 accident.  *Id.* at 433.  He did, however, find evidence of brain injury that occurred sometime before July 2006.  *Id.*  Dr. Granacher reported that Miller had a Global Assessment of Functioning ("GAF") score of 65.  *Id.* at 456.  He opined that Miller had the mental capacity to engage in the work that he is trained, educated, or experienced to perform.  *Id.* at 456.

In December 2007, Miller went, at the request of his attorney, to see Dr. Eric Johnson. *Id.* at 12, 525-35.  Dr. Johnson did tests to determine Miller's ability to do work-related activities.  *Id.* at 12.  On December 20, 2007, he reported that Miller had mental impairments that prevented him from making occupational, performance, personal, and social adjustments.  *Id.* at 12, 530.

On August 28, 2008, Dr. Pamela Tessnear reviewed Miller's medical file and gave her opinion on his mental impairments and resulting limitations.  *Id.* at 13, 615-18.  Dr. Tessnear noted that Miller had been diagnosed with a cognitive brain disorder.  *Id.* at 13.  Further, she noted that Miller has had brain damage for probably most of his life and possibly his entire life. *Id.*  In addition, she found Miller had some symptoms of depression.  *Id.* Nonetheless, overall

Dr. Tessnear found Miller's symptoms to be mild and to fall short of the requirements in the regulations' mental listings.  *Id.*  She also opined that the limitations in Dr. Johnson's report were more severe than the evidence as a whole supported.  *Id.*  Thus, she found his report to be inconsistent with the other evidence.  *Id.*

### PROCEDURAL HISTORY THROUGH THE ALJ HEARING

Miller filed applications for DIB and SSI on August 30, 2006.  *Id.* at 109-113 (DIB application), 105-108 (SSI application).  The Social Security Administration denied Miller's applications initially on November 2, 2006, *id.* at 57-60, and then again upon reconsideration on April 4, 2007, *id.* at 64-66.  Thereafter, Miller filed a written request for a hearing.  *Id.* at 67-69.  Subsequently, on July 7, 2008, Administrative Law Judge Andrew J. Chwalibog ("ALJ") conducted a hearing and heard testimony from Miller and Melissa Glannon, a vocational expert.  *See id.* at 20-40 (transcript of hearing).  On October 14, 2008, the ALJ conducted a second hearing and only heard testimony from Gina K. Baldwin, another vocational expert ("VE").  *See id.* at 41-47 (transcript of hearing).  The ALJ wanted a second hearing to take testimony from the VE because Dr. Tessnear completed her report on Miller's medical file after the first hearing.  *Id.* at 44.

At the second hearing, the ALJ presented the VE with various hypotheticals.  *Id.* at 44-46.  The ALJ presented a hypothetical person with some of Miller's current restrictions and his past training and work experience.  *Id.* at 44-45.  The VE testified that such a person could not do Miller's previous work.  *Id.* at 45.  The VE did identify millions of jobs at the national level and thousands of jobs at the regional level that such a person could perform.  *Id.*  She identified

heavy, medium, and light exertional level jobs for such a person as well as sedentary jobs. *Id.* The VE testified that such a person could perform these jobs even if he had a poor ability to maintain attention and concentration. *Id.* The VE maintained that these jobs could be performed even with the limitations in Dr. Johnson's report. *Id.* at 45-46.

Miller's counsel asked the VE one question. He asked what impact, if any, would there be on the ALJ's hypotheticals if the individual could not repetitively use his right leg for pushing, pulling, climbing, and squatting. *Id.* at 46. The VE testified that this would eliminate the heavy exertional level jobs and the laundry worker at the medium work classification. *Id.* However, all the other jobs would still be available to the individual. *Id.*

## THE ALJ'S ANALYSIS FOLLOWING THE HEARING

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. §§ 404.1520, 416.920.[1] In this case, at Step 1, the ALJ found that Miller had not engaged in substantial gainful activity since August 21, 2006, the date he allegedly became disabled. Tr. at 12. At Step 2, the ALJ found that Miller the following severe impairment: cognitive brain

---

[1]      The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (citations omitted).

disorder. *Id.* at 12.   At Step 3, the ALJ found that Miller did not have an impairment or combination of impairments that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 15.   Thus, the ALJ could not find Miller was disabled on that basis.   At Step 4, the ALJ found that Miller's impairments prevented him doing any past relevant work.   *Id.* at 17.   His past work as a truck driver was medium level, semi-skilled work.   *Id.* Based on the VE's answers, the ALJ found that Miller was unable to perform past relevant work. *Id.*   Considering Miller's age, education, work experience, and residual functional capacity ("RFC"), the ALJ found at Step 5 that there were a significant number of jobs in the national economy that Miller could perform.   *Id.* at 17-18.   Therefore, on that basis, the ALJ did not find Miller disabled.   *Id.* at 18.   On March 25, 2009, the Appeals Council declined to review the ALJ's decision, *id.* at 1-3, at which point the ALJ's decision became the final decision of the Commissioner of Social Security.

Miller now seeks review in this Court.

## DISCUSSION

On appeal to this Court, Miller argues that the ALJ erred at step five by relying on the vocational expert because it was unclear whether the VE was referring to part-time or full-time jobs when he found that there were a significant number of jobs in the national economy that Miller could perform.   Miller's argument fails.

When the ALJ found that Miller could not return to his past work, the burden shifted to the ALJ to show by substantial evidence that Miller has the capacity to perform other substantial gainful activity that exists in the national economy.   *See Varley v. Sec'y of Health & Human*

*Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  To meet this burden, there must be "a finding supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978). Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a "hypothetical" question, but only "if the question accurately portrays [plaintiff's] individual physical and mental impairments." *Varley*, 820 F.2d at 779 (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)).

In concluding that Miller could perform a significant number of jobs in the national economy, the ALJ did rely on testimony from the VE.  He asked the VE what, if any, jobs could a person perform with Miller's age, education, work experience, and residual functional capacity. Tr. at 44-45.  The VE testified that Miller had about four million jobs available to him nationally. *Id.* at 45.  He stated that Miller could perform a variety of jobs, including as a laborer, laundry worker, and an inspector.  *Id.*  The VE's conclusion was not altered when the ALJ changed the hypothetical.  *Id.*  The VE testified that even if the person had a poor ability to maintain attention and concentration he could still perform these jobs.  *Id.*  Further, the limitations that Dr. Johnson identified did not alter the VE's conclusion.  *Id.* at 45-46.  Miller's counsel added a limitation to the ALJ's hypotheticals.  He asked whether a person could not use his right leg to pull, push, and squat would affect the VE's conclusion.  *Id.* at 46.  In that case, the VE stated that all the heavy level and some medium level jobs would be eliminated but the others would remain.  *Id.* Based on this testimony, the ALJ found that the Commissioner met his burden and Miller had a significant number of jobs available to him in the national economy.  *Id.* at 18.  There is no

evidence nor any allegation that the ALJ's hypotheticals did not accurately portray Miller's impairments.  Therefore, substantial evidence supported this finding.

Miller argues substantial evidence did not support this finding because the ALJ did not ask whether the jobs available to Miller were part-time or full-time.  In other words, Miller asserts that the factual record is ambiguous and needs to be clarified.  Miller points out that Social Security Ruling 96-8p, which defines RFC, states:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *2 (1996).  Based on this ruling, Miller argues that at step five the ALJ must find that Miller can perform a significant number of *full-time* jobs.  Miller overstates the meaning of Ruling 96-8p.  Ruling 96-8p applies to the ALJ's RFC finding before step four—not the ALJ's finding at step five.  Ruling 96-8p only states that the ALJ must make his RFC finding based on full-time work.  Miller does not contest the ALJ's RFC finding.  Ruling 96-8p does not govern what finding the ALJ must make at step five.

Prior to Ruling 96-8p, the Sixth Circuit stated that the regulations regarded part-time work as "substantial work activity."  *Conn v. Sec'y of Health and Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995) (citing 20 C.F.R. § 404.1572(a) (1989); *Davis v. Sec'y of Health & Human Servs.*, 915 F.2d 186, 189 (6th Cir.1990)).  Thus, the ALJ did not have to find that the plaintiff had the ability to work full-time.  *Id.*

The Seventh Circuit, however, has rejected an argument like Miller's.  That Court  held that a VE may, consistent with Ruling 96-8p, testify as to the numbers of jobs that a claimant can

perform without specifically identifying the percentage of those jobs that are part-time. *See Liskowitz v. Astrue*, 559 F.3d 736, 745 (7th Cir. 2009). Similar to the reasoning applied here, the Court in *Liskowitz* noted that 96-8p applies to the ALJ's RFC determination before step four—not the VE's testimony relied on at step five. *Id.* at 745. As a result, to say that the ALJ may deny benefits only if he finds the claimant capable of some form of full-time work is quite different from saying that only full-time jobs can constitute significant work in the national economy. *Id.* In light of that difference, *Liskowitz* did not require the VE to identify which jobs were part-time and which were full-time.

Like the plaintiff in *Liskowitz*, Miller did not try to rebut the VE's testimony with other evidence. *See id.* at 745-46. Though the burden at step five was on the Commissioner, Miller could have presented evidence in his motion that these jobs were not "substantial gainful work" within the meaning of Section 423(d)(2)(A) or were part-time jobs. He did neither. Additionally, Miller's counsel could have raised this issue when he asked the VE a question at the second hearing. He did not. Rather, the ALJ met his burden at step five and Miller did nothing to rebut the ALJ's finding with evidence.

Some courts have interpreted Ruling 96-8p similar to Miller and stated that a finding of the ability to perform full-time work is required at step five. *See Pugh v. Astrue*, No. 3:08-CV-117, 2009 WL 1361922, at *4 n. 6 (E.D. Tenn. 2009). *Pugh* appears not to follow the plain meaning of Ruling 96-8p and *Liskowitz*. But *Pugh* is not helpful to Miller's position because the case is distinguishable. There, the plaintiff had evidence that he could perform only part-time work. *Id.* at *4; *see also Bladow v. Apfel*, 205 F.3d 356, 359 (8th Cir. 2000) (stating

that if a plaintiff can only work part-time, then Ruling 96-8p mandates a disability finding).  For

example, a doctor in *Pugh* opined that the plaintiff could not complete an eight-hour work day.

*Id.*  In the instant case, Miller presented no evidence that he can perform only part-time work.

Thus, even if the interpretation in *Pugh* of Ruling 96-8p is applied, Miller's contention fails.

In addition, the questioning by the ALJ and Miller's counsel and the VE's answers do not

imply that the jobs identified are all part-time jobs.  On the other hand, in *Liskowitz*, the VE

admitted that she had "no way of knowing" how many of the jobs she identified were part-time

jobs.  *Id.* at 744.  Even with such a concession, the Seventh Circuit still maintained that the VE

is not required to specify whether the jobs she identifies are full-time or part-time.  In fact, the

plaintiff's counsel there conceded at oral argument that no government data source contains this

information, revealing a practical problem with placing such a requirement on step five.  *Id.* at

745.

Miller also contends that the Eleventh Circuit takes his position. *See Kelley v. Apfel*, 185

F.3d 1211, 1214 (11th Cir. 1999).  But Miller overstates the holding of *Kelley*.  *Kelley* did not

reach the question presented here, since the ALJ properly had found that the plaintiff could do

full-time work.  *Id.* at 1215.  There was no finding about whether Ruling 96-8p requires the ALJ

at step five to make certain that the jobs identified by a VE are full-time.  The Court explicitly

stated that "[it saves] for another day the question of the relevance of part-time work at Step

Five, but [encourages] the Commissioner to make his regulations more clear and understandable

in this regard."  *Id.* at 1215 n.4.

-9-

Thus, the ALJ did not err by relying on the VE and concluding that Miller could perform a significant number of jobs in the national economy.

## CONCLUSION

Accordingly, it is hereby **ORDERED** as follows:

(1)     The plaintiff's Motion for Summary Judgment, R. 12, is **DENIED**;

(2)     The defendant's Motion for Summary Judgment, R. 13, is **GRANTED**; and,

(3)     **JUDGMENT** in favor of the defendant will be entered contemporaneously herewith.

This the 27th day of October, 2009.

**Signed By:**

**_Amul R. Thapar_**

**United States District Judge**

-10-